**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **RAYMOND L. JOWERS,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | **SA-10-CV-0944 NN** |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| **Defendant.** | § | |

## ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

### I. Introduction

Plaintiff Raymond Jowers seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits ("DIB") by the Administrative Law Judge ("ALJ") on October 16, 2009.[1]  Plaintiff contends that the ALJ's conclusion that Plaintiff retained the residual functional capacity ("RFC") to perform work available in the local and national economies is not supported by the substantial evidence.  For this reason, Plaintiff asks the court to reverse, remand and order the entry of a finding of disability, or, in the alternative, to remand the case for a new hearing and decision.[2]

After considering Plaintiff's brief,[3] Defendant's brief in support of the Commissioner's

---

[1] Docket Entries 1, 16 & 18.  See also Administrative Transcript ("Transcript") at 16-31.

[2] Docket Entry 16 at 20.

[3] Docket Entry 16.

decision,[4] Plaintiff's reply brief,[5] the transcript of the Social Security Administration (hereinafter "SSA") proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I GRANT Plaintiff's request for relief and REMAND this action for further proceedings consistent with this opinion.[6]

I have jurisdiction over this matter under 28 U.S.C. § 636(c) because the parties consented to proceed before a magistrate judge for all matters in this case.[7]  The district judge transferred this action to me for disposition on April 6, 2011.[8]

## II. Jurisdiction

The court has jurisdiction under 42 U.S.C. § 405(g).

## III. Administrative Proceedings

According to the record in this case, Plaintiff fully exhausted his administrative remedies prior to filing this action in federal court.  Plaintiff applied for DIB on March 23, 2005, alleging a disability beginning September 27, 2002.[9]  The SSA denied Plaintiff's application both initially, on June 7, 2005,[10] and on reconsideration, September 13, 2005.[11]  Thereafter, an administrative

---

[4] Docket Entry 17.

[5] Docket Entry 18.

[6] Plaintiff asked that "the decision of the Commissioner should be reversed and remanded solely for calculation and awarding of benefits.  Alternatively, the decision should be reversed and the matter remanded for a new hearing and decision." Docket Entry 16 at 20.  The Court is granting Plaintiff's alternate request for relief.

[7] Docket Entries 12 & 14.

[8] Docket Entry 15.

[9] Transcript at 108-113.

[10] Transcript at 95-99.

[11] Transcript at 89-92.

hearing was held on February 28, 2007.[12]  At that hearing, an ALJ heard testimony from Plaintiff, medical expert Dr. Dorothy Leong, and vocational expert Jesus Duarte.[13]

On July 6, 2007, the ALJ issued a written decision which concluded that Plaintiff was capable of performing jobs available in the local and national economies.[14]  Because the ALJ found that Plaintiff retained the RFC to perform work as an office assistant, an information clerk, and/or an interviewer, he further held that Plaintiff was not disabled.[15]

After the ALJ issued an unfavorable decision, Plaintiff requested review of the hearing and decision on July 20, 2007.[16]  The Appeals Council granted Plaintiff's request for review because of the ALJ's insufficient assessment of Plaintiff's mental impairments, as well as the failure to "adequately evaluate" the evidence in the record that the Veterans Administration [VA] considered Plaintiff 100% unemployable.[17]  For these reasons, the Appeals Council remanded the case for further proceedings consistent with its decision.[18]

The Appeals Council's decision included detailed instructions directing the ALJ to: develop the record fully as it related to Plaintiff's psychiatric impairments (including the

---

[12] Transcript at 1120-80.

[13] Id.  During the first administrative hearing, Plaintiff testified that he was unable to work as a result of his ankle and knee impairments, difficulty with social interactions, frequent diarrhea and lower back pain.  See Transcript at 1120-1180.  The Court's copy of the transcript has a bad reproduction of page 1157 which contains testimony from the first administrative hearing.  This evidence was not cited by either of the parties and is not material to my decision.

[14] Transcript at 27A-K.

[15] Id.

[16] Transcript at 41.

[17] Transcript at 36.

[18] Transcript at 35-38.

instruction to obtain additional testimony from a medical expert with psychological or psychiatric expertise and/or order a consultative examination, if necessary); "[g]ive further consideration to the opinion from Veterans Affairs" in accordance with the applicable Social Security Ruling; "[g]ive further consideration to the claimant's maximum residual functional capacity…;" and, "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base…."[19]

On September 19, 2009, a second ALJ conducted a second administrative hearing on Plaintiff's application.[20]  Plaintiff was represented by counsel at the hearing.  Plaintiff's attorney examined and questioned Plaintiff,[21] vocational expert Jeffrey Kiehl,[22] and medical expert Dr. Dorothy Leong during the hearing.[23]

Plaintiff, who was forty-five years old at the second administrative hearing,[24] testified that he lived with his wife and three daughters, then-aged five, nine and sixteen.[25]  Although he was the primary caretaker for his three daughters, Plaintiff testified that he relied heavily on his oldest child for help.[26]  He stated that he left his last job as a part-time maintenance person at

---

[19] Transcript at 37.

[20] Transcript at 1089-1119.

[21] Transcript at 1100-16.

[22] Transcript at 1111-18.

[23] Transcript at 1093-1110.  The transcript of the second administrative hearing identified the medical expert as "Dr. Dorothy Leone."  Id.  In the decision, however, the ALJ referred to the medical expert as Dr. Dorothy Leong.  Transcript at 16-31.  Dr. Leong also testified at the first administrative hearing in this case.  Transcript at 1153-75.

[24] Transcript at 1116.

[25] Transcript, at 1105.

[26] Id.

McDonald's because he was unable to perform the lifting and carrying requirements of the job.[27] When asked about why he was unable to obtain and sustain employment, Plaintiff testified that his ankle and knees "lock out," which "prevents…any kind of walking, carrying or moving anything that's heavy."[28]  He further stated that his lower back was painful when he sat, causing him to change position often.[29]  The lower back pain also contributed to his inability to lift and carry.[30]

When asked about any other impairments, Plaintiff told the ALJ about his struggle with Post Traumatic Stress Disorder (which caused him difficulty in relating to others and to self-isolate),[31] frequent urination as a result of his diabetes,[32] frequent diarrhea caused by his Irritable Bowel Syndrome (IBS),[33] and significant short-term memory loss.[34]  He testified that the only method available to him to relieve the severe pain and swelling in his ankles and knees was alternating ice and heat since his liver condition prevented him from taking Ibuprofen.[35]  When asked about any other medications he took and their side effects, Plaintiff testified that he took

---

[27] Transcript at 1100 -1101.

[28] Transcript at 1101.

[29] Id.

[30] Transcript at 1102.

[31] Transcript at 1102-1103.  Plaintiff testified, for example, that he did not finish the school work required to earn his teaching credential because he got into verbal altercations with other students and faculty.  Transcript at 1105-06 & 1109.

[32] Transcript at 1104.

[33] Id.

[34] Id.

[35] Transcript at 1106-1107.

medication for his moods which resulted in cardiac complications, exhaustion and weight gain.[36]

The second ALJ also heard the testimony from medical expert Dr. Dorothy Leong.[37]  Dr. Leong testified that there was objective medical evidence in the record of meniscal tears in both knees,[38] degenerative lumbar changes, diabetes, and a past cardiac catheterization.[39]  Because Dr. Leong had little or no psychiatric experience, she declined to give any medical expert opinion on the evidence in the record of Plaintiff's mental impairments and resulting limitations.[40]  She did, however, testify that none of Plaintiff's physical limitations met or medically equaled a Listing in her opinion.[41]  Dr. Leong opined that Plaintiff had the physical capability to "lift 20 pounds occasionally, 10 pounds frequently, the ability to sit, stand, and walk at six hours in an eight-hour workday.  Crouching and crawling would be occasionally and no other limitations established."[42]

Vocational expert Jeffrey Kiehl also testified at the second administrative hearing.[43]  After considering Plaintiff's testimony regarding his past work as an Air Marshal,[44] an

---

[36] Transcript at 1108.

[37] Transcript at 1093-1100.

[38] Transcript at 1095.

[39] Transcript at 1096.

[40] Transcript at 1099.

[41] Id.

[42] Transcript at 1099.

[43] Transcript at 1111-18.

[44] Transcript at 1112.

Immigration Officer[45] and a brief episode as a telemarketer,[46] as well as the ALJ's detailed hypothetical,[47] Mr. Kiehl concluded that Plaintiff was unable to return to any of his past work.[48] Mr. Kiehl opined that Plaintiff could work as a final assembler of eyeglasses, envelope addresser, and/or "[a]ssembler of buttons and miscellaneous notions."[49] Mr. Kiehl, stated however, that an individual would be unemployable if he had "moderate to severe pain such that it affected the ability to be able to be attentive and responsible in the work setting and [his] ability to carry out normal work assignments satisfactorily…."[50]

On October 16, 2009, a third ALJ issued the decision concluding that Plaintiff was not under a "disability," as defined by the Social Security Act ("the Act"), from the date Plaintiff submitted his application through the date of the second administrative hearing decision.[51] Specifically, the ALJ found that Plaintiff retained the RFC to perform work available in the local and national economies.[52]

After receiving the ALJ unfavorable decision dated October 16, 2009, Plaintiff requested

---

[45] Transcript at 1113.

[46] Transcript at 1114.

[47] Transcript at 1116.

[48] Transcript at 1116-17.

[49] Transcript at 1117.

[50] Transcript at 1118.

[51] Transcript at 16-27.

[52] Id.

review of the hearing and decision on November 4, 2009.[53]  On December 3, 2010, the Appeals Council concluded that there was no basis upon which it could grant Plaintiff's request for review, thereby denying Plaintiff's request.[54]  Plaintiff commenced the instant action in this court on November 23, 2010.[55]

## IV.  Issue Presented

Whether the ALJ's decision is supported by substantial evidence and comports with relevant legal standards?

## V.  Analysis

*A.*     *Standard of Review*

In reviewing the Commissioner's decision denying disability insurance benefits, I am limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[56]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[57]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible

---

[53] Transcript at 52.  There appear to be two requests for review in the record—one dated November 4, 2009, and another dated November 6, 2009.  Transcript at 52 & 54.  The timeliness of Plaintiff's request for review is not an issue in this case.

[54] Transcript at 4-7 & 8-11.

[55] Docket Entry 1.

[56] Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. § 405(g).

[57] Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990) (quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)).

choices' or 'no contrary medical evidence.'"[58]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[59]  In reviewing the Commissioner's findings, I must carefully examine the entire record, but refrain from re-weighing the evidence or substituting my judgment for that of the Commissioner.[60]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[61]  The courts weigh four elements of proof in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[62]

1.    Entitlement to Benefits

Every individual who is insured for disability insurance benefits, has not reached retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[63]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

---

[58]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988) (quoting Hames, 707 F.2d at 164).

[59]  Martinez, 64 F.3d at 173.

[60]  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995); Villa, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner.").

[61]  Martinez, 64 F.3d at 174.

[62]  Id.

[63]  42 U.S.C. § 423(a)(1).

last for a continuous period of not less than twelve months."[64]  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work.[65]

### 2.    Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[66]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[67]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[68]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[69]  The second step involves determining whether the claimant's impairment is severe.[70]  If it is not severe, the claimant is

---

[64]  Id. § 1382c(a)(3)(A).

[65]  Id.  § 1382c(a)(3)(B).

[66]  20 C.F.R. § 404.1520.

[67]  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[68]  20 C.F.R. § 404.1520.

[69]  Id.

[70]  Id.

deemed not disabled.[71]   In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[72]   If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[73]   If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of his past work.[74]   If he is still able to do his past work, he is not disabled.[75]   If he cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[76]   If he cannot do other work, he will be found disabled.   The claimant bears the burden of proof at the first four steps of the sequential analysis.[77]   Once he has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and non-exertional limitations, able to maintain for a significant period of time.[78]   If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to

---

[71]  Id.

[72]  20 C.F.R. § 404.1520.

[73]  Id.

[74]  Id.

[75]  Id.

[76]  Id.

[77]  Leggett, 67 F.3d at 564.

[78]  Watson  v. Barnhart, 288 F.3d 212, 217 (5th Cir. 2002).

perform the alternative work.[79]

In the instant case, the ALJ reached his decision at step five of the evaluation process.[80] At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful employment since his alleged onset date of disability.[81]  The ALJ then concluded at steps two and three that Plaintiff had an impairment or combination of impairments ("posttraumatic stress disorder (PTSD), depressive disorder NOS, fatty liver disease, and joint arthritis") which were severe,[82] but did not meet or medically equal a listed impairment as of the date Plaintiff was last insured.[83] At step four, the ALJ found that, although Plaintiff was unable to return to his past relevant work, Plaintiff retained the residual functional capacity to "perform sedentary work…."[84]  In defining Plaintiff's RFC, the ALJ further held:

> Claimant can perform occasional stooping, kneeling, crawling and stair climbing; no climbing of ladders, ropes or scaffolds; and no work around dangerous moving machinery.  Claimant cannot work at unprotected heights….Claimant's mental impairments limit him to low stress types of work with no more than occasional decision making, changes in the work, routine, interaction with the public and co-workers. Claimant has mild to moderate pain which allows him to remain attentive and responsive in a work setting.  Claimant takes medications which to (*sic*) not prohibit him from remaining alert to perform required functions in a work setting.[85]

At step five, the ALJ held that given Plaintiff's age (defined as a younger individual),

---

[79] <u>Anderson v. Sullivan</u>, 887 F.2d 630, 632-33 (5th Cir. 1989).

[80] Transcript at 16-31.

[81] Transcript at 21.

[82] <u>Id</u>.

[83] Transcript at 23.

[84] Transcript at 24.

[85] Transcript at 24.

education (a more than high school education), and vocational experience (transferability of skills immaterial),[86] Plaintiff could perform work as "a final assembler of optical products...addresser...and assembler of buttons."[87]  Based on the foregoing, the ALJ concluded that Plaintiff was not under a disability.[88]

B.      Is the ALJ Decision Supported by Substantial Evidence?

Plaintiff challenges the second hearing decision, asserting that the ALJ: (1) erroneously failed to accord controlling weight to the opinions of Plaintiff's treating physicians; (2) failed to evaluate properly Plaintiff's mental impairments in compliance with the Appeals Council's order and the applicable Regulations; and (3) failed to conduct the assessment of Plaintiff's credibility in accordance with applicable legal standards.[89]  Plaintiff maintains these mistakes constitute reversible error.  I agree Plaintiff's grounds for reversal are meritorious, but the evidence is insufficient to remand this action for an award and calculation of benefits.  Instead, this matter must be remanded for further proceedings consistent with this opinion.

1.      Did the ALJ properly consider the opinions of Plaintiff's treating physicians?

In his first point of error, Plaintiff argues that the ALJ failed to either accord controlling weight to the opinions of the treating physicians or to perform the requisite analysis when declining to do so.[90]  Plaintiff asserts that the ALJ failed even to cite, let alone to analyze

---

[86] Transcript at 26.

[87] Transcript at 27.

[88] Transcript at 16-27.

[89] Docket Entries 16 & 18.

[90] Docket Entries 16 & 18.

properly, any of the medical findings by Plaintiff's first treating physician, Dr. Javier.[91]

Similarly, Plaintiff contends the ALJ failed either to give the opinions of Plaintiff's second

treating physician, Dr. Quesada, controlling weight or comply with the applicable legal standards

for refusing to do the same.[92]  Defendant argues that the ALJ's decision to accord less than

controlling weight to the opinions of Plaintiff's treating physicians is supported by the substantial

evidence of the record and applies the appropriate legal standards.[93]

 The ALJ is empowered to decide the weight to accord the various pieces of evidence in

the record and is afforded great deference as to his decisions regarding the same.[94]  When

assessing the opinion of a treating physician, the ALJ is required to give it controlling weight if

he finds that it is "well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case…."[95]  If the

ALJ declines to afford controlling weight to the opinions of treating physician, he is required to

explain in precise detail the reasons for deciding to do so.[96]

 To guide the ALJ through this process, the Regulations outline six factors for the ALJ to

---

[91] Docket Entry 16 at 14.

[92] Docket Entry 16 at 14-16.

[93] Docket Entry 17 at 4-9

[94] Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985) ("The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.").  See also Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir. 1988).

[95] 20 C.F.R. § 404.1527(d)(2).  See also Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000) (quoting Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) ("'The expert opinion[] of a treating physician as to the existence of a disability [is] binding on the fact-finder unless contradicted by substantial evidence to the contrary (brackets in original).").  See also Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

[96] 20 C.F.R. § 404.1527(d)(2).  See Loza, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation.").

consider and discuss when explaining the weight accorded to the treating physician's medical opinion.[97]  Those criteria are: (1) the examining relationship (the ALJ should generally give more weight to a source who examined the claimant);[98] (2) the treatment relationship (the ALJ should generally give more weight to a source who treated claimant),[99] including the length, nature and extent of the treatment relationship, as well as the frequency of the examination(s);[100] (3) the supportability of the opinion (the ALJ should give greater weight to the source who provides more relevant evidence to support the opinion);[101] (4) consistency (the ALJ should give greater weight to opinions which are consistent with the record as a whole);[102] (5) specialization (the ALJ should generally give greater weight to the opinion of a specialist);[103] and (6) any other factors which "tend to support or contradict the opinion."[104]  Ordinarily, the ALJ must use "all of the factors provided in 20 CFR 404.1527…." when explaining the weight given to the opinion of a treating physician.[105]  However, the ALJ is not mandated to examine each and every one of the

---

[97] 20 C.F.R. § 404.1527(d)(2).

[98] 20 C.F.R. § 404.1527(d)(1).

[99] 20 C.F.R. § 404.1527(d)(2).

[100] 20 C.F.R. § 404.1527(d)(2)(I)-(ii).

[101] 20 C.F.R. § 404.1527(d)(3).

[102] 20 C.F.R. § 404.1527(d)(4).

[103] 20 C.F.R. § 404.1527(d)(5).  See also Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990) (citing Dorsey v. Heckler, 702 F.2d 597, 603 (5th Cir. 1983).

[104] 20 C.F.R. § 404.1527(d)(6).

[105] Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p (hereafter "SSR 96-2p"), July 2, 1996, at * 4.  See also Newton, 209 F.3d at 456 ("This court now…holds that an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist.").

factors "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another."[106]

In this case, Defendant implicitly concedes that the ALJ failed to analyze each factor outlined in 20 C.F.R. § 404.1527 by arguing that "the ALJ need not consider each of these factors where there is competing first hand medical evidence contradicting the treating physician's opinion."[107]  The issue, then, is whether the ALJ properly cited competing first-hand medical evidence and explained how it contradicted the opinions of Plaintiff's treating physicians.  If the ALJ neglected to cite and analyze adequately the treating physicians' opinions and corresponding, contrary first-hand medical evidence, his failure to assess the treating physicians' opinions according to all the factors outlined in 20 C.F.R. § 404.1527 constitutes a failure to apply the correct legal standard and requires remand.[108]

In this case, the ALJ's decision is imprecise and insufficiently specific when addressing the reports and records from the treating physicians—Dr. Eduardo Javier and Dr. Angel Quesada—who concluded in several different reports that Plaintiff was unable to perform work activities.[109]  For example, the ALJ failed to identify Plaintiff's long-term treating physician, Dr.

---

[106] Newton, 209 F.3d at 458 (referring to Spellman v. Shalala, 1 F. 3d 357 (5th Cir. 1993)).  See also Walker v. Barnhart, 158 Fed. App'x 534, 2005 WL 3340251 (5th Cir. Dec. 9, 2005) ("We do not require consideration of each of the factors set out in Newton where, as here, 'there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another.'") (quoting Newton, 209 F.3d at 458).

[107] Docket Entry 17 at 8.

[108] See Newton, 209 F.3d at 458.

[109] See Transcript at 303, 475-482, 900-06.

Javier,[110] by name at any point in the decision.[111]  Similarly, in at least one section of the

decision, the ALJ attributed a treatment report to Plaintiff's later treating physician Dr.

Quesada[112] when, in fact, that report was authored by Dr. Javier.[113]

Defendant contends that the failure to identify Dr. Javier by name does not constitute

prejudicial error *per se* because the ALJ cited the treatment records which were authored by Dr.

Javier.[114]  It is true that in some sections of the administrative hearing decision the ALJ referred

to VA medical records, many of which were written by Dr. Javier.[115]  A number of those records,

however, were created by other physicians who had varying levels of specialization, as well as

relationships of different length and frequency with the Plaintiff.[116]  For example, the ALJ

referred to one hundred pages of VA treatment records for the proposition that said "evidence

generally establishes claimant's continuing intermittent medical evaluations as routine

---

[110] Transcript at 160 & 1107.  Dr. Javier treated Plaintiff for many years beginning on September 1, 2000.

[111] See Transcript at 16-31.

[112] At the time of the second administrative hearing, Dr. Quesada had been Plaintiff's treating physician for approximately two years and was, at that time, Plaintiff's primary care physician.  Transcript at 1107.

[113] See Transcript at 26 & 522-23.  The ALJ asserted that the treatment record, which he attributed to Dr. Quesada but was actually authored by Dr. Javier, "indicate[s] essentially normal findings…."  Transcript at 26. While the treatment note does include a list of Plaintiff 's temperature, pain scale, blood pressure, pulse, respiration and weight on that day (February 28, 2006), it is primarily a list of the medications Plaintiff was taking at the time. Transcript at 522-23.  Dr. Javier did not include any narrative or explanation of his findings.

[114] Docket Entry 17, at 6.

[115] See, e.g. Transcript, at 22, 23.  The ALJ attributed a medical report to treating physician Dr. Quesada when, in fact, it was written by Dr. Javier.  Transcript at 528-29.  See also Transcript at 357 (cited as 10F/77 at Transcript at 22), 460 (cited 12F/12 at Transcript at 22) & 522 (cited as 17F/10-11 at Transcript at 22) which are reports the ALJ designated "VA" records and are authored by Dr. Javier.  See Transcript at 331 (cited as 10F/51 at Transcript at 22) & 556 (cited as 17F/44 at Transcript at 22) which are "VA" medical reports that were not written by Dr. Javier.

[116] See 20 C.F.R. § 404.1527.

examinations."[117]   These reports, generated between August 2005 and October 2005, were written by at least fifteen different doctors or dentists and at least four nurses.[118]   As a matter of course, the ALJ must first identify the evidence at issue before he can attempt to discredit it with competing first-hand medical evidence.   Thus, his failure to identify and attribute the evidence properly is not a nominal error.   It is prejudicial,[119] i.e. reversible, error.[120]

Defendant refers the court to a significant amount of the evidence in the record supporting the proposition that the treating physicians' opinions that Plaintiff was disabled were inconsistent with some of their own treatment notes, as well as the substantial evidence in the record.[121]   However, the court can only focus on what the ALJ cited in the administrative decision when deciding if the ALJ correctly invoked the first-hand evidence rule.[122]   While the ALJ cited some reports by treating physicians and examining physicians that appear to indicate Plaintiff had normal test results and less than disabling pain,[123] he also ignored (or mis-characterized) highly probative reports by the treating physicians.   For example, Plaintiff's long-

---

[117] Transcript at 22 (citing Transcript, at 513-612).

[118] Transcript at 513-612 (containing the treatment notes authored by Drs. Whitney, McAnear, Hernandez, Mata-Galan, Javier, Kilgore, Timothy, Allen (optometrist), Roberts, Arora, Hebert, Porter, Nguyen, Latoni, as well as dentists Anderson and McNamara).

[119] Carey v. Apfel, 230 F. 3d 131, 142 (5th Cir. 2000) (quoting Kane v. Heckler, 731 F.2d 1216, 1220 (5th Cir. 1984) ("To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'")).

[120] Carey, 230 F. 3d at 142 ("This Court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure.").

[121] Docket Entry 17 at 4-9.

[122] Newton, 209 F.3d at 455) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council.").

[123] Transcript at 26 (citing Transcript at 912-13) (cited in decision as AC24F3-5) & Transcript at 977 (cited in decision as AC15F1-6).

time treating physician Dr. Javier wrote on June 30, 2005: "Because of his chroinic (*sic*) lower back pain, knee pain and right ankle conditions in my opinion he cannot go to work anymore."[124] Similarly, the ALJ failed to acknowledge the Multiple Impairment Questionnaire filled out by treating physician Dr. Javier dated April 8, 2005.[125]  On that form, Dr. Javier documented the nature, location, frequency and precipitating factors of Plaintiff's pain,[126] as well as the functional limitations resulting from the same.[127]  The ALJ failed to mention this important report even though its findings—by a treating physician—lend significant support and credibility to a similar report authored by subsequent treating physician, Dr. Angel Quesada.[128]

The ALJ also gave very little weight to the Multiple Impairment Questionnaire authored by treating physician Dr. Angel Quesada on December 4, 2007.  The ALJ did not cite competing first-hand medical evidence to discredit this treating physician opinion because he stated that he could find "no support in the medical evidence" for the conclusion in the Questionnaire that Plaintiff could "lift less than 5 pounds and stand/walk less than 1 hour."[129]  In fact, these are the very same exertional limitations stated in the Questionnaire filled out by Dr. Javier two years

---

[124] Transcript at 303 (hearing exhibit 10F/23).  The ALJ cited other treatment records in this same exhibit (10F/4 and 10F/51), but did not mention this important record.

[125] Transcript at 475-82 (hearing exhibit 14F).

[126] Transcript at 476-77.

[127] Transcript at 477-80.

[128] Transcript at 475-82 & 900-08.  See also Loza, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation.").

[129] Transcript at 25.  The ALJ cited the Questionnaire as AC22F1-4.  In actuality, the document to which the ALJ referred is exhibit AC23F1-8.  Transcript at 899-906.  The similar exertional limitations reported by Dr. Javier are found in Transcript at 477-78.

earlier.[130]  Moreover, while the ALJ is not bound by the VA's disability decision,[131] the VA's conclusion that Plaintiff was 100% unemployable lends some credence to the allegations of disabling limitation contained in the treating physicians' reports.  Thus, it was disingenuous to state that there was absolutely no support in the record for Dr. Quesada's conclusions.

For all the aforementioned reasons, the ALJ failed to identify properly all the important treating source opinion in the record.  Because the ALJ ignored or discounted several important pieces of treating physician opinion, he did not provide contradictory first-hand medical evidence to discredit the same.  Because he did not discuss competing first-hand medical evidence, his failure to assess the factors outlined in 20 C.F.R. § 404.1527 constitutes reversible error.[132]

Notably, the ALJ relied, in significant part, on the testimony of the medical expert, as well as the opinion of the state agency medical consultants.  The medical expert was not a source of first-hand medical evidence because she did not examine Plaintiff.  Moreover, she testified at the first administrative hearing.  That testimony, in combination with the entirety of the administrative record, was considered inadequate and formed the basis for the Appeals Council's remand.  Similarly, the form filled out by the state agency medical consultant does not constitute first-hand medical evidence.  Although the ALJ accepted and adopted the findings of a state

---

[130] Transcript at 902-03.

[131] Loza, 219 F.3d at 393 (citing 20 C.F.R. § 404.1504) ("[T]he determinations of other agencies, while persuasive, do not bind the Social Security Administration.").  See also Loza, 219 F.3d at 395 ("A VA rating of 100 percent service connected disability is not legally binding on the Commissioner, but it is evidence that is entitled to great weight….").

[132] Newton, 209 F.3d at 458.

agency medical consultant found in a Residual Functional Capacity Assessment,[133] the ALJ

wholly discounted the opinions of Dr. Quesada included on the questionnaire because it was

"form statement" that was unsupported by the examination records.[134]  The RFC Assessment is a

form on which a state agency (non-examining, non-treating) physician checked off boxes to

indicate his or her opinions about Plaintiff's abilities and limitations.[135]  No reasons are listed for

any of the findings on the form, nor is there any narrative.  The only information contained on the

form comes from the boxes which were checked.

     While the record contains contradictory evidence,[136] the ALJ had a duty to discuss it all

thoroughly in the decision.  In the Fifth Circuit, "the ALJ must consider all the record evidence

and cannot 'pick and choose' only the evidence that supports his position."[137]  In this case, the

ALJ ignored material evidence from treating physicians.

     The Rulings and Regulations require the ALJ to explain thoroughly the basis for the

weight accorded to the treating source opinion in the decision:

> the notice of the determination or decision must contain specific reasons for the weight
> given to the treating source's medical opinion, supported by the evidence in the case
> record, and must be sufficiently specific to make clear to any subsequent reviewers the
> weight the adjudicator gave to the treating source's medical opinion and the reasons for

---

[133] Transcript at 442-48 (cited in Transcript at 25 as Ex.11F).  The ALJ wrote that the statements contained in the RFC Assessment form were "weighed as nonexamining expert sources."  Transcript at 25.  However, the ALJ included the finding from the form that Plaintiff was capable of "light range work" in the decision.  Id.

[134] Transcript at 25-26.

[135] Transcript at 442-48.

[136] Compare Transcript at 357, 363 & 460 (treatment notes which record essentially normal exertional and psychological findings) with Transcript at 185, 201-203, 211 & 303 (treatment notes which establish that Plaintiff suffered from continuous and/or disabling pain).  The existence of this apparently conflicting evidence precludes a remand for an award of benefits.

[137] Loza, 219 F.3d at 393.

that weight.[138]

The ALJ committed reversible error in failing to identify and analyze all the treating physician opinion evidence in the record and precisely explain how the same was contradicted by other first-hand medical evidence.  As such, the ALJ was obligated to analyze the factors outlined in 20 C.F.R. § 404.1527 and articulate the weight afforded to the treating physicians' opinions in the hearing decision.  The ALJ's mistakes constitute a failure to apply the correct legal standard in the decision and require remand.  On remand, the ALJ must re-assess the opinions of the treating physicians.  The ALJ must either specifically identify the treating source statement and pair it with contradictory first-hand medical evidence (if available) or analyze the treating source opinion using each and every one of the criteria set forth in 20 C.F.R. § 1527.

2.      *Did the administrative hearing decision include a proper evaluation of Plaintiff's mental impairments?*

In his second point of error, Plaintiff contends the ALJ failed to comply with the Appeals Council's remand order directing the ALJ to fully develop the record with respect to Plaintiff's mental impairments, including, if necessary, to obtain a consultative medical examination.[139] Plaintiff argues that the ALJ neglected to assess Plaintiff's mental impairments as required by the applicable Ruling.  Plaintiff asserts that these constitute errors of law and necessitate remand.[140] In response, Defendant claims that the ALJ properly included Plaintiff's mental limitations in the

---

[138] Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, SSR 96-2p (hereafter "SSR 96-2p"), July 2, 1996, at *5.

[139] Docket Entry 16 at 16-19.

[140] Id.

RFC assessment.[141]  Defendant insists the ALJ's conclusions regarding Plaintiff's mental

functioning are supported by the substantial evidence of the record and that, consequently, no

consultative examination was necessary.[142]

    20 C.F.R. § 404.977(b) requires an administrative law judge to comply with an order

from the Appeals Council.  It provides:

> The administrative law judge shall take any action that is ordered by the Appeals Council
> and may take any additional action that is not inconsistent with the Appeals Council's
> remand order.[143]

Most of the Appeals Council's remand order concerned further development and analysis of the

evidence in the record with respect to Plaintiff's mental impairments.[144]  The first instruction in

the order required the ALJ to:

> •    Obtain additional evidence concerning the claimant's psychiatric impairments in
> order to complete the administrative record in accordance with the regulatory
> standards regarding consultative examinations and existing medical evidence (20
> CFR 404.1512-1513).  The additional evidence may include, if warranted and
> available, a consultative mental status examination and medical source statements
> about what the claimant can still do despite the impairments.  The Administrative
> Law Judge will also attempt to obtain all available updated treatment records.[145]

The remand order also instructed the ALJ to:

---

[141] Docket Entry 17 at 9.

[142] Id.  Defendant did not respond to Plaintiff's contention that the ALJ failed to analyze the functional
limitations imposed by Plaintiff's mental impairments as required by both the Appeals Council's order and the
applicable regulation, 20 C.F.R. § 404.1520a.

[143] See also Houston v. Sullivan, 895 F.2d 1012, 1015 (5th Cir. 1989).  See Zavadil v. Astrue, 2010 WL
3924708 (E.D.N.Y. Sept. 29, 2010), at *5 (quoting Scott v. Barnhart, 592 F. Supp. 2d 360, 371 (W.D.N.Y.
2009)(brackets in original) ("An 'ALJ's failure to comply with [an] Appeals Council's order constitutes legal error,
and necessitates a remand.'").

[144] Transcript at 37.

[145]Id.

- Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

- Further, if necessary obtain supplemental evidence from a medical expert (preferably, either psychologist or psychiatrist) to clarify the nature and severity of the claimant's impairments (20 CFR 404.1527(f) and Social Security Ruling 96-6p).[146]

Finally, the order directed the ALJ to re-formulate Plaintiff's RFC with respect to any new findings related to the above and to obtain testimony from a vocational expert, if warranted, regarding Plaintiff's ability to perform available work in light of the same.[147]

20 C.F.R. § 404.1520a requires a "special technique" to be used at each step during the administrative review process in the evaluation of mental impairments.[148]  The adjudicator must first determine if the claimant has a medically determinable mental impairment by "specify[ing] the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document[ing] [the] findings…."[149]  Second, the adjudicator must "rate the degree of functional limitation resulting from the impairment(s)" as prescribed in 20 C.F.R. § 404.1520a(c).

Rating the degree of functional limitations is a process precisely outlined in the Regulations.  First, the adjudicator must "obtain a longitudinal picture of [the claimant's] overall

---

[146] Id.

[147] Transcript at 37.

[148] 20 C.F.R. § 404.1520a(a).

[149] 20 C.F.R. § 404.1520a(b)(1).

degree of functional limitation."[150]  To do this, the adjudicator must

> consider all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.[151]

Next, the adjudicator must rate the degree of the limitations[152] in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation.[153]  The adjudicator must use a five-point scale (none, mild, moderate, marked or extreme) to rate the degree of limitation imposed by the mental impairment(s) on the first three functional areas and a four-point scale (none, one or two, three, four or more) to rate the fourth functional area (episodes of decompensation).[154]  When rating the functional limitations imposed by mental impairments, the adjudicator must "document application of the technique in the decision."[155]

In the instant case, the ALJ used the right procedure, but applied it to the wrong evidence. Although the ALJ rated Plaintiff's functional limitations in the areas of activities of daily living, social functioning, maintaining concentration, persistence or pace, and episodes of decompensation, he used a record previously held to be incomplete and inadequate by the

---

[150] 20 C.F.R. § 404.1520a(c)(1).

[151] 20 C.F.R. § 404.1520a(c)(1).

[152] 20 C.F.R. § 404.1520a(c)(2) ("We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis.").

[153] 20 C.F.R. § 404.1520a(c)(3).

[154] 20 C.F.R. § 404.1520a(c)(4).

[155] 20 C.F.R. § 404.1520a(e).

Appeals Council.[156]  In this case, the second ALJ developed the record by obtaining updated treatment records and presiding over the second administrative hearing,[157] and the third ALJ used the previously gathered evidence and authored the hearing decision.[158]

The ALJs failed to request clarification from Plaintiff's treating psychiatrist, failed to order a consultative examination, and failed to have a medical expert present at the hearing with psychological or psychiatric expertise to help them navigate the medical evidence in the record as it pertained to Plaintiff's mental impairments.  In light of the Appeals Council's detailed order directing the ALJ to develop the record with respect to Plaintiff's mental impairments, these failures—separately or in combination—constitute reversible error.  Given the specific directives of the Appeals Council, the ALJ should have called a medical expert with psychological or psychiatric expertise.  Instead, he obtained testimony from the very same medical expert whose testimony at the first hearing was considered inadequate with respect to Plaintiff's mental impairments by the Appeals Council.[159]  In fact, Dr. Leong declined to proffer any testimony regarding Plaintiff's mental impairments at the second administrative hearing because it was not her area of expertise.[160]  The ALJ has significant discretion and is accorded substantial deference in assessing the record as a whole,[161] but the ALJ may not substitute his lay interpretation of

---

[156] Transcript at 24.  See also Transcript at 37.

[157] Transcript at 1089-1118.

[158] Transcript at 16-31.

[159] See Transcript at 35-38 & 1120-80.

[160] Transcript at 1099.  Similarly, Dr. Leong also refused to give any testimony on Plaintiff's mental impairments at the first administrative hearing because of her lack of expertise in that area.  Transcript at 1174-75.

[161] Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir. 1988) (citing 42 U.S.C. § 405(g)).

medical evidence for expert medical opinion.[162]

In light of the order to develop the record, the ALJ was obligated to obtain some medical expert analysis of the evidence in the record regarding Plaintiff's mental impairments whether through a consultative examination, a request for additional information from Plaintiff's treating psychiatrist or psychologist, and/or an examination of a medical expert with the appropriate speciality background.[163]   The failure to do so constituted a failure to comply with the Appeals Council's order,[164] a failure to fulfill the obligation to develop the record fully and fairly,[165] and consequently, invalidated the assessment of Plaintiff's functional limitations.   These errors of law require remanding of the case.[166]   On remand, the ALJ must obtain a consultative examination and obtain testimony from a medical expert with psychological or psychiatric expertise.   If the newly developed evidence warrants, the ALJ must obtain testimony from a vocational expert.

3.      *Did the administrative hearing decision contain a proper assessment of Plaintiff's credibility?*

In Plaintiff's final point of error, he contends the ALJ failed to perform the credibility assessment in accordance with the applicable Regulations and Ruling.[167]   Plaintiff contends the ALJ included a conclusory, and therefore, inadequate statement that Plaintiff's symptoms were

---

[162] Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003) (quoting Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990)).

[163] Id.

[164] 20 C.F.R. § 404.977(b).

[165] Newton, 209 F.3d at 458 (quoting Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995)) ("The Fifth Circuit also imposes a duty on an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'").

[166] 20 C.F.R. § 404.977(b).

[167] Docket Entry 16 at 19-20.

not credible to the extent they contradicted the ALJ's conclusions regarding Plaintiff's RFC.[168]

In response, Defendant asserts that the ALJ's finding that Plaintiff's allegations of disabling pain

were less than credible was supported by the substantial evidence of the record.[169]

Social Security Ruling 96-7p details the requisite elements for an ALJ's credibility

analysis as outlined in 20 C.F.R. § 404.1529.[170]  The Ruling makes it clear that the ALJ must not

only perform a thorough analysis of the Plaintiff's credibility but must also expressly articulate

his findings and conclusions regarding the same in the decision.[171]

The credibility evaluation is a two step process.[172]  In the first step, the ALJ must

determine "whether there is an underlying medically determinable physical or mental

impairment(s)…that could reasonably be expected to produce the individual's pain or other

symptoms."[173]  Once an underlying physical or mental impairment has been identified,

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the
> individual's symptoms to determine the extent to which the symptoms limit the
> individual's ability to do basic work activities.[174]

In analyzing the Plaintiff's credibility, the ALJ must consider the following, in addition to

the objective medical evidence:

---

[168] Id.

[169] Docket Entry 17 at 10-11.

[170] Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p (July 2, 1996)(hereafter, "SSR 96-7p").

[171] SSR 96-7p at *4 ("The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement….").

[172] SSR 96-7p at *2.

[173] Id.

[174] SSR 96-7p at *2.

1.      The individual's daily activities;

2.      The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6.      Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[175]

Plaintiff concedes that the ALJ properly performed the first part of the credibility assessment.[176]

The ALJ adequately assessed the regulatory factors when analyzing the credibility of Plaintiff's allegations of pain and limitation in light of the record before him.  He discussed Plaintiff's daily activities,[177] the location of Plaintiff's pain,[178] the type and effectiveness of the medications Plaintiff takes for his exertional and non-exertional impairments,[179] the measures Plaintiff used to alleviate his joint pain,[180] and other material factors such as Plaintiff's apparent

---

[175] SSR 96-7p at *3 (quoting 20 C.F.R. § 404.1529(c)(3)).

[176] Docket Entry 16 at 19.  See Transcript at 26 ("the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms….").

[177] Transcript at 23-25.

[178] Transcript at 21-26.  The ALJ devoted little, if any, time to discussing the duration or frequency of Plaintiff's pain.  Transcript at 19-27.

[179] Transcript at 19-27.

[180] Transcript at 23.

refusal of or failure to comply with certain recommended treatments (e.g., surgery for Plaintiff's knee impairments, group therapy for his mental impairments,[181] as well as his failure to lose weight and exercise[182]).  The problem, however, is that the ALJ relied on evidence that is significantly flawed.  The failure to analyze properly the opinions of Plaintiff's treating physicians and to develop the record fully with respect to Plaintiff's mental impairment necessarily impacted the ALJ's assessment of Plaintiff's credibility.  Had the ALJ accorded greater weight to one or both of Plaintiff's treating physicians or discovered additional, material information about Plaintiff's mental impairments, his assessment of Plaintiff's credibility may have been different.  For these reasons, the ALJ must re-assess Plaintiff's credibility in light of a fully developed record and each factor set forth in 20 C.F.R. § 404.1529 on remand.

## VI.  Conclusion

Based on the foregoing, I conclude that the ALJ committed reversible error in the analyzing Plaintiff's treating physicians' opinions, in developing the record with respect to Plaintiff's mental impairments, and in the assessing Plaintiff's credibility.  For these reasons, I REVERSE the Commissioner's decision and REMAND this case for further proceedings consistent with this decision.

**SIGNED** on February 27, 2012.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[181] Transcript at 22 & 24.  The ALJ stated only that "plaintiff indicated no interest in surgical repair" for the "bilateral degenerative joint disease of the knees."  Transcript at 22.  The ALJ failed to mention Plaintiff's testimony at the first administrative hearing that his treating physicians did not recommend the surgery due to the condition of the ligaments surrounding Plaintiff's knee.  Transcript at 1137.

[182] Transcript at 22-23 & 25-26.